UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 64-00721-CV-WILLIAMS/MAYNARD

**RAYMOND SHARPTON,** *et. al.***,**

 Plaintiffs,

v.

**THE BOARD OF PUBLIC INSTRUCTION
OF INDIAN RIVER COUNTY, FLORIDA,**

 Defendant.

_____/

## REPORT AND RECOMMENDATION ON
## ANTHONY G. STEWART'S MOTIONS TO INTERVENE (DE 157 AND DE 178)

**THIS CAUSE** comes before this Court upon Order of References, DE 181 and DE 184, and the above Motions and related filings. Having considered the entire record, I recommend that Mr. Stewart's Motions be denied.

### BACKGROUND

In 1964, two sets of parents of students attending Indian River County public school filed a lawsuit alleging that a system of racial segregation existed in Indian River County, Florida. On May 19, 1969, United States District Judge C. Clyde Atkins entered an order approving a joint plan between the parties calling for the complete desegregation of the Indian River County public school system (the "1969 Order"). Over the next thirty years, the Board of Public Instruction of Indian River County, Florida (the "School Board") made various changes to the school system pursuant to the 1969 Order, including closing formerly all black schools, establishing new integrated schools and implementing a new system of elementary, middle, and high schools.

In 1994, the School Board and the National Association for the Advancement of Colored People, Indian River County Branch ("NAACP IRC"), which had been substituted as Plaintiff by the Court, jointly filed a motion requesting approval of a plan negotiated between the School Board and the NAACP IRC (the "1994 Joint Plan"). DE 72. On May 23, 1994, Judge Atkins granted the motion and entered a Revised Order Approving Plan (the "1994 Order"). DE 73. The 1994 Order set forth conditions in the following areas: (I) Facilities Reorganization; (II) Minority Teacher Ratio; (III) Minority Teacher Recruitment/Employment; (IV) Minority Faculty/ Staff Assignment by School; (V) Future Schools in the Gifford Community; (VI) Minority Student Achievement/ Resource Allocation; (VII) Student Assignments; (VIII) Plan Supervision; (IX) Transportation; and (X) Extra-Curricular. DE 73. The 1994 Order did not conclude that the Indian River School Board had achieved unitary status or relieve the School Board of further remedial responsibilities.

On September 19, 2016, the president of the NAACP IRC moved to reopen the case on the basis that the Indian River County school district still had not achieved unitary status. DE 78. The School Board moved for an order declaring that unitary status had been achieved in some areas and releasing the School Board from court supervision in those areas. DE 92. The NAACP IRC opposed the motion and moved for an order directing the parties to mediate. DE 101; 105. United States District Judge Kathleen Williams granted the NAACP IRC's motion and ordered the parties to mediation. DE 111.

The parties' mediation resulted in a Joint Plan for the Achievement of Unitary Status, which was negotiated and approved by the School Board and the NAACP IRC (the "2018 Joint Plan"). DE 127. The 2018 Joint Plan requires the parties to work together to achieve a fully desegregated school system. It also creates an Equity Committee to monitor and document

compliance with the 2018 Joint Plan for up to five years.  The 2018 Joint Plan set forth conditions relating to (I) establishment of the Equity Committee; (II) mentoring of new teachers and instructional staff; (III) strategies for recruitment of African American teachers; (IV) representation of African American teachers and instructional staff; (V) partial unitary status and continued plan supervision; (VI) African American student achievement/ resource allocation; (VII) student assignments; (VIII) transportation; (IX) extracurricular; and (X) changes and disputes to the plan.  *Id*. at 4-11.

By joint motion, the parties asked Judge Williams to approve the 2018 Joint Plan as a consent order superseding the 1994 Order; declare that the School Board had achieved partial unitary status in the areas of facilities, non-instructional staff, and administrative staff; and retain jurisdiction until the School Board achieves full unitary status in the remaining areas.  DE 127.  On September 13, 2018, Judge Williams issued an order approving the 2018 Joint Plan (the "2018 Order").  DE 128.  The 2018 Order further requires the parties to file a joint status report every six months advising the Court on progress towards the goals in the 2018 Joint Plan, inform the Court of any disagreements related to enforcement within 30 days, and mediate any disagreements related to enforcement within 90 days.  *Id.* at 1-2.  The parties have complied with these reporting and mediation requirements.

On February 1, 2021, Mr. Anthony Stewart, a lifelong resident of Indian River County and parent of two current Indian River County students, wrote a letter to the Court asking for the 1994 Order to be reinstated and to "deep six the [2018] Joint Plan as there is nothing joint about it."  DE 153 at 2.  Mr. Stewart has since filed a number of related letters, motions, and pleadings, all of which seek to have himself or his organization – the Southern Christian Leadership Conference of

Indian River County ("SCLC IRC") [1] – intervene and replace the NAACP IRC as named Plaintiff in this case. Specifically, in addition to the letter at DE 153, Mr. Stewart filed a motion to intervene on behalf of the SCLC IRC, DE 157; a motion to intervene on behalf of himself, DE 178; a motion to discharge NAACP IRC as the Plaintiff, DE 179; a petition for writ of mandamus or injunctive relief, DE 180; and a motion for a hearing, DE 183. These matters were referred to me for report and recommendation, DE 181 and 184, and are now ripe for review.

## DISCUSSION

Federal Rule of Civil Procedure 24 provides two means by which a nonparty to a case may intervene in an action. Rule 24(a), which governs intervention of right, provides:

> ***On timely motion***, the court must permit anyone to intervene who:
>
> (1) is given an unconditional right to intervene by a federal statute; or
>
> (2) claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a) (emphasis added). Rule 24(b)(1), which governs permissive intervention, provides:

> ***On timely motion***, the court may permit anyone to intervene who:
>
> (a) is given a conditional right to intervene by a federal statute; or

---

[1] I note that Plaintiff NAACP IRC challenges the legitimacy of SCLC IRC, asserting that it is not affiliated with the National Southern Christian Leadership Conference. *See* DE 155 at 2, DE 158. In rebuttal, Mr. Stewart provides a certificate from the State of Florida, Department of State, certifying SCLC IRC's status as a corporation in Florida, and a letter from the IRS verifying SCLC IRC's tax-exempt status, as of January 6, 2020. DE 157 at 4-5. These documents appear to miss Plaintiff's point, which is not whether Mr. Stewart has incorporated an organization called the Southern Christian Leadership Conference of Indian River County, but rather whether that entity is really an affiliated chapter of the historic, nationally known organization of that same name formerly led by Dr. Martin Luther King, Jr. Mr. Stewart does not address that point anywhere in his pleadings. Thus, this Report and Recommendation presumes that Mr. Stewart's SCLC IRC is not an affiliated chapter of the National Southern Christian Leadership Conference.

>> (b) has a claim or defense that shares with the main action a common question of law or fact.

Fed. R. Civ. P. 24(b)(1) (emphasis added).

Both means of intervention require that a motion be timely. A would-be intervenor bears the burden to show that his motion is timely. A court considering the timeliness of a motion to intervene examines the following factors:

> (1) The length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene;
>
> (2) The extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case;
>
> (3) The extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied; and
>
> (4) The existence of unusual circumstances militating either for or against a determination that the application is timely.

*Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1294 (11th Cir. 2017) (quoting *Meek v. Metro. Dade Cty., Fla.*, 985 F.2d 1471, 1477 (11th Cir. 1993), *abrogated on other grounds by Dillard v. Chilton Cty. Comm'n*, 495 F.3d 1324, 1332-33 (11th Cir. 2007)). Another important factor is the "point to which the suit has progressed." *Nat'l Ass'n for Advancement of Colored People v. New York*, 413 U.S. 345, 365–66 (1973). An untimely motion is due to be denied. *Id*.

I have considered the four factors and conclude that Mr. Stewart's motions to intervene and/or replace the NAACP IRC as Plaintiff in this case are untimely. In considering the first factor – the length of time during which Mr. Stewart knew or reasonably should have known of his

interest in the case before he sought to intervene – I note that Mr. Stewart is a lifelong resident of Indian River County, a former student of Indian River County public schools, a former teacher in Indian River County public schools, and a current parent of two Indian River County students. DE 178 at ¶ 1. In addition, one of his teachers was formerly a named plaintiff in this case. DE 157 at 3. Thus, he has known about this case for a long time and would have known of his own interest in the case far before contacting the Court in February 2021. In his first letter filed on February 1, 2021, Mr. Stewart raises questions about the timing of the NAACP IRC's motion to reopen the case in 2016 and suggests that it too closely coincides with the School Board's retention of a "high profile attorney." DE 153 at 2. Yet, Mr. Stewart waited almost five years before bringing this concern to the Court's attention. His knowledge of the litigation and potential issues during that time frame weighs heavily against the timeliness of his motions. *See In re Wholesale Grocery Prod. Antitrust Litig.*, 849 F.3d 761, 767 (8th Cir. 2017*)* (plaintiff knowledge of litigation "often weighs heavily in cases where would-be intervenor was aware for a significant period of time before attempting to intervene").

Next, I consider the prejudice to existing parties from Mr. Stewart's failure to apply for intervention earlier. "The most important consideration in determining timeliness is whether any existing party to the litigation will be harmed or prejudiced by the proposed intervenor's delay in moving to intervene. In fact, this may well be the only significant consideration when the proposed intervenor seeks intervention of right." *Comm'r, Alabama Dep't of Corrections v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1171 (11th Cir. 2019) (quoting *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1073 (5th Cir. 1970)).

Contrary to Mr. Stewart's claim that "there is no delay or prejudiced to any party since there has not been any practical movement for more than 20 years in this cause," DE 178 at 2, the

parties have expended substantial time, resources and effort in litigating and mediating this case since its reopening in 2016. They reached an agreement on whether partial unitary status had been achieved in the areas of facilities, non-instructional staff, and administrative staff.  To now revert to the 1994 Order as Mr. Stewart suggests would cause significant prejudice to the existing parties, particularly the School Board.  Moreover, the parties have engaged in numerous meetings and mediations since entry of the 2018 Order.  They have filed a myriad of joint status reports in compliance with the 2018 Order, including: a First Joint Status Report on March 11, 2019 (DE 135), a Second Joint Status Report on September 13, 2019 (DE 136), a Joint Annual Report on December 9, 2019 (DE 138), a Joint Annual Report from the Equity Committee Chairperson on December 27, 2019 (DE 141), a Joint Status Report Update on March 13, 2020 (DE 146), a Joint Response to Court Ordered Status Report On December 18, 2020 (DE 149-1), a Fourth Joint Status Report on February 12, 2021 (DE 154-1), and an Update from the Outgoing Equity Committee Chairperson on March 16, 2021 (DE 163).[1]  In March 2021, the parties returned to mediation before a special master.  DE 166, 168.  Three mediation sessions were held, and a Fifth Joint Report was filed with the Court on July 21, 2021.  DE 182-1.  To allow intervention or substitution of a party at this point would be highly prejudicial.  Forcing the existing parties to return to square one nearly three years after entry of the 2018 Order would be unfair and unjust.

Mr. Stewart also has not established the third or fourth factors, that is, that he would be prejudiced if his motions are denied or that unusual circumstances render his motions timely. Because his motions to intervene are untimely, they should be denied.  *See Associated Builders &*

---

[1] Community members involved in the Equity Committee have also expended time and energy in numerous meetings, including on February 16, 2021, March 4, 2021, April 22, 2021, May 13, 2021, June 14, 2021, and July 8, 2021.  DE 182-1.

*Contractors, Inc. v. Herman*, 166 F.3d 1248, 1257 (D.C. Cir. 1999) ("If a motion was not timely, there is no need for court to address the other factors that enter into an intervention analysis.").

Even if his motions were timely, Mr. Stewart has not proffered relevant, credible evidence showing that his interest in the litigation is not adequately represented by the NAACP IRC. A party seeking intervention of right must show, among other things, that their "interest is represented inadequately by the existing parties to the suit." *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). Adequate representation is presumed when an existing party in the case is seeking the same objective as a proposed intervenor. *Meek*, 985 F.2d at 1477; *see also Planned Parenthood v. Kaul*, 942 F.3d 793, 799 (7th Cir. 2019) (where there is common goal between the would-be intervenor and a representative party, a showing of gross negligence or bad faith is needed to rebut the presumption of adequacy). Here, Mr. Stewart and the NAACP IRC share the same goal in this litigation, which is to represent the interests of African American residents of Indian River County in ensuring the complete and full desegregation of the Indian River County school system. Mr. Stewart seeks to revert to the 1994 Order, but a difference in tactics does not necessarily indicate a lack of adequate representation. *United States v. City of Miami*, 278 F.3d 1174, 1179 (11th Cir. 2002) (police association concerned with advancement of minorities was adequately represented by government interest in ending discrimination for all minorities). The proposed intervenor bears the burden – albeit minimal – to show that existing parties cannot adequately represent his interest. *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993).

Mr. Stewart asserts that NAACP IRC is not an adequate representative of his interests for the following reasons: (1) the current NAACP IRC president, Mr. Anthony Brown, is employed by Florida Department of Health Department in Indian River County; (2) Mr. Brown's wife is an

employee of the school district for over ten years; (3) the School Board may have transferred $10,000 to the NAACP IRC in 1997 to assist with recruiting African American teachers; (4) the NAACP IRC moved to reopen this case in 2016 shortly after the School Board hired a "high profile attorney;" and (5) prominent community members told Mr. Stewart that they were against signing the 2018 Joint Plan. As an initial matter, these conclusory allegations are largely unsupported by proffered evidence and thus do not amount to a concrete showing that the NAACP IRC's representation is inadequate. *See* § 1909 *Intervention under the 1966 Amended Rule—Adequacy of Representation*, 7C Fed. Prac. & Proc. Civ. § 1909 (3d ed. Apr. 2021 Update) (where the intervenor and a party to the suit share the same ultimate objective, "there must be a concrete showing of circumstances in the particular case that make the representation inadequate."). Even assuming Mr. Stewart could substantiate his allegations, they are not indicative of collusion between the NAACP IRC and the School Board. And I decline Mr. Stewart's invitation to speculate.

That is not to say Mr. Stewart does not have valid information to provide to the Court. I take no position on that question. But intervention in the case at this late date is not the way in which Mr. Stewart can bring his concerns to the Court. As the NAACP IRC noted, if Mr. Stewart wishes to be heard on matters relating to this litigation, he may move for leave to file an amicus curiae brief.[1]  DE 158.

---

[1] An amicus is a "friend of the court." *In re Bayshore Ford Truck Sales Inc.*, 471 F.3d 1233, 1249 n. 34 (11th Cir. 2006). District courts have discretion whether to grant leave to a nonparty to file an amicus brief. *Id.* A court may grant amicus status where the nonparty can "'contribute to the court's understanding of the matter in question' by proffering timely and useful information." *Georgia Aquarium, Inc. v. Pritzker*, 135 F. Supp.3d 1280 (N.D. Ga. 2015) (quoting *Conservancy of Southwest Florida v. U.S. Fish and Wildlife Serv.*, 2010 WL 3603276 at *1 (M.D. Fla. Sept. 9, 2010)). Since there is no formal rule governing the filing of amicus curiae briefs, a party wishing to seek leave to file an amicus brief should comply with Federal Rule of Appellate Procedure 29. Rule 29 provides that one who wishes to file an amicus brief must file along with the proposed brief, a motion that states "the movant's interest" and "the reason why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case." Fed. R. App. Proc. 29(a)(3).

For all the above reasons, this Court recommends that the District Court deny Mr. Stewart's Motions to Intervene (DE 157, DE 178) for untimeliness and failure to demonstrate inadequate representation.

## CONCLUSION

Accordingly, the undersigned respectfully recommends that Mr. Stewart's motions to intervene (DE 157 and DE 178) be **DENIED**.

### NOTICE OF RIGHT TO OBJECT AND SHORTENED OBJECTIONS PERIOD

Because the referred matters have been pending for an inordinate amount of time, and to promote judicial economy and finality to the parties, it requires prompt resolution. As such, the Court finds it necessary and appropriate to shorten the time for any objections and response pursuant to Southern District of Florida Magistrate Judge Rule 4(a). Accordingly, the parties shall have **SEVEN (7) DAYS** from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Kathleen M. Williams. *See* 28 U.S.C. § 636(b)(1)(C); S.D. Fla. Mag. J. R. 4(a). Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this 16th day of September, 2021.

_____
SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE